**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | | |
|---|---|---|
| **Shawn David Tipton** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Cause No. 4: 11-CV-661-JTK** |
| | § | |
| **Michael J. Astrue, Commissioner,** | § | |
| **Social Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

Shawn David Tipton sought judicial review of the denial of his applications for

disability income benefits and supplemental security income.[1] Tipton alleged he became

unable to work at age 34 because of a motor vehicle accident.[2] Throughout the

administrative case, he consistently reported that he received intensive care for up to five

days.[3] In actuality, he was observed overnight and released the following day.[4] Tipton

initially based disability on headaches, dizziness, vision problems, and nausea, allegedly

---

[1] *See* docket entry # 2 (complaint).

[2] SSA record at p. 163.

[3] *Id*. at p. 187; p. 285; p. 289; p. 297 & p. 334.

[4] *Id*. at pp. 269-70.

caused by the accident;[5] he later added back pain, neck pain, and depression.[6]

**The Commissioner's decision**.   After considering Tipton's applications, the Commissioner's ALJ determined that although Tipton had severe impairments—essential hypertension, headaches, mood disorder and learning disorder[7]—Tipton had the residual functional capacity (RFC) to do a reduced range of light work.[8] Because a vocational expert identified jobs a person with Tipton's RFC could do,[9] the ALJ concluded that Tipton was not disabled under the Social Security Act.[10]  After the Appeals Council denied Tipton's request for review,[11] the ALJ's decision became a final decision for judicial review.[12] Tipton filed this case to challenge the ALJ's conclusion.

**Development of the record**.   This case is remarkable for the absence of medical

---

[5]*Id*. at p. 163.

[6]*Id*. at pp. 228, 231 & 240.

[7]*Id*. at p. 17.

[8]*Id*. at p. 19.

[9]*Id*. at p. 50 (identifying jobs of machine tender, production assembly worker and poultry worker).

[10]*Id*. at p. 22.

[11]*Id*. at p. 1.

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

evidence of disabling impairment. Tipton argued that the ALJ should have ordered neurological, neuropsychological, and orthopedic exams to provide evidence about his alleged headaches, memory problems, head-injury residuals, and musculoskeletal problems.[13] He maintained the ALJ erred in developing the administrative record.

> The ALJ has a duty to fairly and fully develop the record as to the matters at issue.[14]

> [T]his duty is not never-ending and an ALJ is not required to disprove every possible impairment. The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.[15]

The evidence in this case provided sufficient medical evidence to determine whether Tipton was disabled because the record contained medical evidence about complaints of headaches, memory, head-injury residuals, and musculoskeletal problems.[16]

   Treatment records for the motor vehicle accident. The emergency room treatment records for injuries sustained in the motor vehicle accident characterized Tipton's injuries as "significant facial trauma," "swelling of his face, and "tenderness of his scalp."[17] The emergency room treatment notes stated that Tipton was driving an all terrain vehicle when

---

[13]Docket entry # 10, pp. 13-15.

[14]*Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1973).

[15]*McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (citations omitted).

[16]SSA record at pp. 272-73 & 276-78 (normal CT scans of right knee, brain, face, neck, chest, abdomen and pelvis).

[17]*Id*. at p. 269.

he was struck.[18]  After Tipton complained about a headache, the emergency room physician

ordered a second CT scan of Tipton's brain and neck; the CT scans were negative.[19]  The

physician found no neurological symptoms.[20]  The treatment notes were highly probative

of Tipton's allegations about headaches, memory, head-injury residuals because his

applications flowed from the accident.  The treatment records did not suggest a need for

a neurological, neuropsychological, or orthopedic exam because there were no neurological

findings and no cranial injury.

Two weeks after the accident, Tipton sought treatment for headaches, nausea and

vision problems.[21]  He reported being struck by a car as a pedestrian and being treated for

3 to 4 days.[22]  The treating physician reviewed the emergency room treatment notes and

observed that upon arrival at the emergency room Tipton was intoxicated and tested

positive for marijuana.[23]  The physician described Tipton's eyes as "bloody looking" and

recommended an ophthalmologist.  She prescribed an anti-biotic for a boil on Tipton's

knee, a pain medication, and an anti-nausea medication.  As impairment, the physician

---

[18]*Id*. at pp. 270 & 274.

[19]*Id*. at p. 273.

[20]*Id*. at p. 269.

[21]*Id*. at p. 285.

[22]*Id*.

[23]*Id*. at pp. 269 & 285.

found only a "mild decrease in range of motion [in the neck] but no severe tenderness."[24] The physician's observations were highly probative of Tipton's allegations because he based disability on impairments that allegedly flowed from the motor vehicle accident. The physician's treatment record did not suggest a need for a neurological, neuropsychological, or orthopedic exam because the physician found only a mild decrease in range of motion in the neck.

Two weeks later, Tipton had an eye exam. The exam was normal. The examiner found "no evidence of lasting injury."[25] The examiner referred Tipton to UAMS Medical Center for a neurology consult for complaints about headaches, memory loss, and sleep disturbance after the motor vehicle accident.[26] The eye exam was highly probative of Tipton's allegation of vision problems because the exam revealed no vision problems. The neurology referral was highly probative of Tipton's allegations of headaches and memory loss because Tipton did not pursue the referral. The failure to pursue the referral undermines Tipton's argument about development of the record for at least two reasons: (1) Tipton reported that his employer told him he could not return to work without a

---

[24]*Id*. at p. 285.

[25]*Id*. at p. 261.

[26]*Id*. at p. 262.

release from a neurologist,[27] and (2) Tipton had the burden of providing medical evidence to prove disability.[28]

Evidence about musculoskeletal complaints.  Twenty-one months after the motor vehicle accident, Tipton's attorney arranged for a physical examination.   Tipton complained about neck pain and low back pain radiating down the right leg.[29]  Tipton did not complain about vision.[30]  The examining physician ordered MRIs of the neck and lower back.  The MRI of the neck showed mild degenerative changes with mild stenosis at C5/6.[31] The MRI of the lumbar spine showed mild degenerative changes in the lower lumbar spine, a mild diffuse bulge with left annular tear and mild right and moderate left neural foraminal narrowing at L4/5,[32] a mild bone spur at L5/S1 with moderate bilateral neural foraminal narrowing, and mild canal stenosis at L4/5 and L5/S1.  The characterization of the radiological findings as "mild" negated the need for a neurological or orthopedic exam.

---

[27]*Id*. at p. 163.

[28]*Bowen v. Yuckert*, 482 U.S. 137, 147 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

[29]SSA record at p. 334.

[30]*Id*. at p. 332 (complaining about allergies) & p. 334 (complaining about depression, migraines, and pain in the neck and back).

[31]*Id*. at p. 328.

[32]*Id*. at p. 331.

<u>Evidence of mental decompensation</u>.   To the extent Tipton complained about evidence of mental decompensation, the evidence did not suggest a need for a neuropsychological exam.  Tipton reported no in-patient mental health treatment when he applied for disability.[33]  Reporting in-patient mental health treatment may have triggered a need to seek out past mental health records.

In addition, there was no evidence Tipton suffered cognitive deficits from head injury.  The ALJ ordered a psychological examination.  The examiner provided a detailed report, but reported no cognitive deficits.  No evidence required a neuropsychological examination.

"The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."[34]  The record provided sufficient medical evidence to determine whether Tipton was disabled.  The ALJ was not required to act as Tipton's substitute counsel, but only to develop a reasonably complete record.[35]  The record in this case was reasonably complete.  The ALJ did not err.

---

[33]*Id*. at p. 165 (listing eye examination at UAMS; office visit with Dr. Seme for headaches, dizziness, eye problems and nausea; and emergency room treatment); p. 186 (adding counseling and medication services).

[34]*Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994).

[35]*Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994).

**Spine injuries**.  Tipton contended the ALJ erred at step two of the disability-determination process by not finding his spinal injuries were severe.[36]  Step two requires the claimant to show a severe impairment, but it does not require the ALJ to explicitly discuss every impairment in an administrative opinion.  Step two directs a conclusion of "non-disabled" if the claimant fails to prove a severe impairment such that the process weeds out claimants whose abilities to work are not significantly limited.[37]  If the claimant meets his burden, the regulations permit the claimant to proceed to the next step of the process.

If the claimant meets his step-two burden, there can be no reversible error where the record shows the ALJ considered all of the claimant's impairments.  The record in this case shows the ALJ considered all of Tipton's impairments because the ALJ reduced his RFC.  Tipton cannot show harm at step two because he proceeded to the third step and because the reduction in RFC accommodated limitations flowing from his impairments.

**Credibility**.  The ALJ discounted the credibility of Tipton's statements about the intensity, persistence, and limiting effects of his alleged symptoms.[38]  Tipton maintained

---

[36]Docket entry # 10, p. 15.

[37]*Bowen v. Yuckert*, 482 U.S. 137, 156-57 (1987) (O'Connor, J., concurring) (concurring and stating that the Social Security Act authorizes the Commissioner to weed out applications by claimants who cannot possibly meet the statutory definition of disability at step two of the disability-determination process).

[38]SSA record at p. 20.

the ALJ failed to do a credibility assessment or provide good reasons for discounting his credibility.

An ALJ has a statutory duty "to assess the credibility of the claimant…."[39]  To evaluate Tipton's credibility, the ALJ followed the required two-step process[40] and considered the required factors.[41]  Thus, the question before the court is whether substantial evidence supports the ALJ's credibility assessment.

In assessing Tipton's credibility, the ALJ relied on the absence of neurological symptoms, the normal eye exam, and the failure to seek medical attention from December 2008 to February 2010.  These considerations were good reasons for discounting Tipton's initial allegations of disabling headaches, dizziness, vision problems, and nausea.  Substantial evidence[42] supported those reasons because the record included a physical

---

[39]*Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

[40]*See Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996).

[41]In considering the credibility a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

[42]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

exam without neurological findings, an eye exam without vision problems, and a record reflecting no medical treatment from December 2008 to February 2010. That evidence was highly probative because Tipton based disability on headaches, dizziness, vision problems, and nausea flowing from the motor vehicle accident. A reasonable mind would consider the evidence as adequate to support the conclusion that Tipton's allegations of disabling headaches, dizziness, vision problems, and nausea were not fully credible.

To the extent Tipton later complained about neck and back pain, Tipton cannot show harm from the failure to explicitly discuss medical evidence about spinal injury because the MRIs reflected no disabling impairment.

**RFC**. Although the medical evidence did not substantiate Tipton's allegations, the ALJ included nonexertional limitations to accommodate limitations flowing from problems with headaches, dizziness, and reaching. Nevertheless, Tipton asserted that the ALJ pulled the RFC out of thin air. He argued that the RFC was not supported by any treating or examining physician.[43]

"A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence."[44] "Medical records, physician observations, and the claimant's subjective statements about his capabilities may

---

[43]Docket entry # 10, p. 16.

[44]*McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).

be used to support the RFC."[45]

The RFC in this case was supported by medical records, physician observations, and Tipton's subjective statements.  The spinal MRIs supported the reduction in RFC to light work.  The MRIs also supported restricting work to occasional overhead reaching.  Tipton's complaints about headaches and dizziness supported the restriction to work without concentrated vibrations, hazards, or unprotected heights.   The mental evaluation[46] supported the restriction to work involving simple, routine and repetitive tasks, and limited contact with the general public.   Nothing supported a further reduction.   A reasonable mind would accept the evidence as adequate to support the conclusion that Tipton could perform a reduced range of light work.  The ALJ did not err in establishing Tipton's RFC.

**Conclusion**.  Substantial evidence supports the ALJ's decision denying Tipton's applications.  The ALJ made no harmful legal error.  For these reasons, the court DENIES

---

[45]*Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011).

[46]The examining psychologist placed Tipton in the borderline range of intellectual functioning.  He diagnosed mood disorder NOS, learning disability, alcohol dependence, and personality disorder.  The examiner reported that Tipton seemed capable of comprehending and/or carrying out simple instructions, and that he demonstrated some impairment in ability to carry out complex instructions.  The examiner opined that Tipton was mildly limited in the ability to cope with the typical demands of basic work like tasks, but reported that he demonstrated no difficulty in sustaining persistence in completing tasks.  The examiner opined that Tipton seemed capable of completing tasks within acceptable time frames.  SSA record at p. 300.

Tipton's request for relief (docket entry # 2) and AFFIRMS the decision denying the applications.

It is so ordered this 20th day of December, 2012.

_____
United States Magistrate Judge